# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARC C. MAKI and | : |
| SUZANNE MAKI, | : |
|     Plaintiffs, | : |
| | :          17-cv-01219-WWE |
| v. | : |
| | : |
| ALLSTATE INSURANCE COMPANY, | : |
|     Defendant. | : |

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS

In February of 2016, Marc and Suzanne Maki noticed a series of cracks throughout the basement walls of their home in South Windsor, Connecticut. Plaintiffs attribute their failing foundation to tainted concrete, likely obtained from the J.J. Mottes Concrete Company. A chemical compound in the Mottes concrete will eventually cause plaintiffs' home to cave in on itself, and there is no known method of preventing the continuing deterioration. Thousands of similarly situated Connecticut residents are facing the prospect of crumbling foundations.

The Makis sued their insurer, Allstate Insurance Company, alleging breach of contract for denying coverage under their homeowners' insurance policy. The complaint also alleges unfair and deceptive trade practices in violation of the Connecticut Unfair Trade Practices Act and the Connecticut Unfair Insurance Practices Act. Allstate filed the instant motion on the grounds that the alleged damage is not covered under the plain language of the policy. Allstate further submits that plaintiffs' statutory claims should be dismissed, as Allstate's denial of coverage was not in bad faith and liability under the policy was not reasonably clear. For the following reasons, defendant's motion to dismiss will be denied.

**DISCUSSION**

The Makis' policy covers "collapse" as follows:

> 12. **Collapse**
> **We** will cover:
> a) the entire collapse of a covered **building structure**;
> b) the entire collapse of part of a covered **building structure**; and
> c) direct physical loss to covered property caused by (a) or (b) above.
>
> For coverage to apply, the collapse of a **building structure** specified in (a) or (b) above must be a sudden and accidental direct physical loss caused by one or more of the following:
> a) a loss **we** cover under **Section I, Coverage C Personal Property Protection**;
> b) hidden decay of the **building structure**;
> c) hidden damage to the **building structure** caused by insects or vermin;
> d) weight of persons, animals, equipment or contents;
> e) weight of rain or snow which collects on a roof;
> f) defective methods or materials used in construction, repair, remodeling or renovation.
>
> Collapse does not include settling, cracking, shrinking, bulging or expansion.
>
> This protection does not change the limit of liability that applies to the covered property.

*Policy, Additoinal Protection, Collapse, p. 15* [ECF No. 19, Exhibit A, p. 38].

**The Suddenness Requirement**

First, Allstate argues that the policy term "sudden" connotes a temporal abruptness of collapse that this case does not present. But the Makis' policy covers collapse caused by "hidden decay," and "defective methods or materials used in construction," both of which plaintiffs allege here. Decay typically consists of a slow progressive decline, so the policy language is arguably inconsistent with any temporal abruptness requirement. Indeed, the additional protection section of the policy concerning collapse also includes protection for "hidden damage to the building structure caused by insects or vermin." Such damage is inherently gradual, yet the policy explicitly covers resulting collapse. See Kelly v. Balboa Ins. Co., 897 F. Supp. 1262, 1268 (M.D. Fla. 2012) ("[B]y their very nature, hidden decay and hidden insect or vermin damage occurs over a period of time.");

see also Dalton v. Harleysville Worcester Mut. Ins. Co., 557 F.3d 88, 93 (2d Cir. 2009) (holding that a sudden destructive force requirement becomes ambiguous where the policy in question defines collapse in a manner which expressly includes conditions that occur slowly).

Given the somewhat indeterminate default legal definition of "collapse" in Connecticut, we cannot preclude the possibility that previously undetectable, structurally devastating cracks that appear in a home's foundation without notice could constitute the sudden collapse of a building structure, in this case caused by hidden decay and defective materials used in construction. All of the covered, gradual causes of collapse included in the Makis' policy necessarily occur slowly until such time as there is a sudden revelation of a catastrophic nature. There is no further requirement that such revelation present itself in the falling down of the building. Here, the abrupt event at issue is the exposure of cracks demonstrating substantial impairment to the structural integrity of the Makis' home. If the same level of impairment – meeting Connecticut's definition of collapse – had been caused instead by hidden termite infestation, it would have been no less sudden.

The Court finds that regardless of the exact scenario, homeowners should not have to wait for their home to fall to the ground to be eligible for explicitly included collapse coverage. See Beach v. Middlesex Mut. Assur. Co., 205 Conn. 246, 253 n. 2 ("Requiring the insured to await an actual collapse would not only be economically wasteful but would also conflict with the insured's contractual and common law duty to mitigate damages.").

Allstate submits that there is nothing anomalous about a "sudden" collapse caused by hidden decay. The Court agrees, but the Makis' policy does not require a sudden "falling down." It requires a sudden collapse, which the Makis have adequately alleged in their complaint. Accordingly, plaintiffs' complaint will not be dismissed for lack of temporal abruptness with respect to the collapse.

**Policy Exclusions**

Second, Allstate argues that losses caused by cracking of walls, defective construction materials, and rust are specifically excluded pursuant to the policy at *Coverages A and B, Paragraphs 15(g) and 22(c), pp. 8-9.* However, as discussed above, coverage for collapse caused by "hidden decay" and "defective methods or materials used in construction" is also specifically included in the policy at *Additional Protection, Paragraph 12, Collapse.* The additional protection for collapse section of the policy is an exception to the policy's more general collapse exclusion. See Capstone Bldg. Corp. v. American Motorists Ins. Co., 308 Conn. 760, 788 (2013) ("Of course, an exclusion can only affect a claim covered in the insuring agreement, and an exception can only reinstate coverage in the initial grant."). Here, the additional protection coverage for collapse may be reasonably read to supersede any contradictory general exclusions, and the policy may reasonably be understood to have contemplated coverage for a "collapse" that follows consequentially from otherwise excluded activity.

The Court finds instructive the broad definition of collapse as established by the Connecticut Supreme Court in Beach:

> As the plaintiffs contend, the policy may reasonably be read to exclude loss related to "settling, cracking, shrinkage, bulging or expansion," only so long as "collapse" does not ensue. Nowhere does the policy express a clear unambiguous intent to exclude coverage for a catastrophe that subsequently develops out of a loss that appeared, at its inception, to fall within the rubric of "settling, cracking, shrinkage, bulging or expansion." On the contrary, the disputed policy provision covers a loss for "collapse" which, not otherwise being excluded, "ensues." To "ensue" means "to follow as a chance, likely, or necessary consequence: result ... to follow in chronological succession." Webster, Third New International Dictionary. By its reference to a "collapse" that "ensues," the policy in this case can reasonably be understood to have contemplated coverage for a "collapse" that follows consequentially from excluded activity.

Beach, 205 Conn. at 251-52. Moreover, "the term 'collapse' is sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of a building." Id. at 252.

That collapse does not include settling, cracking, shrinking, bulging, or expansion can be reasonably read to signify that such exhibitions alone, that is without substantial impairment of structural integrity, do not amount to collapse. Indeed, the policy in Beach did not insure against settling, cracking, shrinkage, bulging or expansion, but the Connecticut Supreme Court was not persuaded by such exclusionary language. 205 Conn. at 250. Accordingly, the exclusions cited by Allstate do not necessarily preclude coverage for the Makis' loss.

### The Entire Collapse Requirement

Third, Allstate argues that the additional coverage for "collapse" does not apply because the policy covers only an "entire collapse." But the Policy covers "the entire collapse of *part* of a covered building structure." (emphasis added). Indeed, coverage for collapse of "part" of a covered building structure is listed separately, immediately after coverage for collapse of a covered building structure. Similarly, defendant's reply brief opens by arguing that plaintiffs' claim should fail because the policy requires an entire collapse of the structure *or a portion thereof.* (emphasis added).

As discussed above, the term collapse is sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of a building. Beach, 205 Conn. at 252. Here, the Makis allege that the entire load-bearing part of the building at and below ground level is irreversibly crumbling and will cause their entire home to fall into the basement. Pls.' Compl. at 3. Plaintiffs have alleged substantial impairment of the structural integrity of their home.

Defendant contends that the modifier "entire" conveys an additional requirement that the part of the building at issue "actually fall down." It is a reasonable interpretation, but not the only one. If Allstate wanted an "actually fall down" requirement, it could have included one in the policy. Given that "collapse" left undefined covers substantial impairment of the structure, it follows that

the modifier "entire" could merely indicate that such impairment must be sufficiently comprehensive in scope.

The entire collapse of a home's foundation can be reasonably understood to be an entire collapse of part of the covered building structure in the sense that the foundation has completely, without limitation, suffered substantial impairment to its structural integrity.

Although this Court in Agosti concluded that "entire collapse" language limits coverage to "actual collapse," as distinguished from "imminent collapse" or "structural impairment," that decision relied on California law at odds with the precedent of Beach. See Agosti v. Merrimack Mut. Fire Ins. Co., 279 F. Supp. 3d 370 (D. Conn. 2017); Jordan v. Allstate Insurance Co., 116 Cal. App. 4th 1206, 1221 (2004). Jordan's analysis of the qualifier "entire" speaks more to the issue of timing than extent: Jordan asked whether the building at issue had already fallen down or was merely threatening to fall down. See Jordan 166 Cal. App. 4th at 1221 ("Whether a potential collapse that is properly described as 'imminent' will result in an entire or total collapse or something less, or no collapse at all, is a matter of pure speculation unless and until such collapse *actually* occurs.") But in Connecticut, a building need not fall down for a collapse to actually occur; mere substantial impairment of the structural integrity is sufficient. Beach, 205 Conn. at 252. "The cases to the contrary, which hold that 'collapse' unmistakably connotes a sudden falling in, loss of shape, or flattening into a mass of rubble, have come to be in the distinct minority." Id. In contrast, the California Court of Appeal in Jordan based its decision on California law, which explicitly excluded impairment from its default definition of collapse. See Doheny West Homeowners' Ass'n v. American Guarantee & Liability Ins. Co., 60 Cal. App. 4th 400, 405 (1997) ("[W]e do not believe that an insured purchasing a coverage entitled 'Additional Coverage for Collapse,' would reasonably expect the policy to cover mere impairment of structural integrity.").

Jordan's conclusion that an entire collapse provision is not satisfied without an actual falling down is not surprising in light of California's determination that mere impairment is not a collapse. In Connecticut, where mere impairment can constitute collapse, an entire collapse requirement could simply signify that such impairment must be total or complete. Here the Makis have alleged that it is.

Finally, the Hon. Stefan R. Underhill has certified a question to the Connecticut Supreme Court to determine what constitutes "substantial impairment of structural integrity" for purposes of applying the "collapse" provision to homeowners' insurance policies. See Karas v. Liberty Ins. Corp., 2018 WL 2002480 (D. Conn. Apr. 30, 2018) 3:13-cv-01836-SRU [ECF No. 70]. The Connecticut Supreme Court's decision could shed significant light on the Makis' prospect of success in the instant case.

Depending on the Connecticut Supreme Court's answer to the certified question, substantial impairment of the structural integrity of the Makis' home may have existed when Marc and Suzanne Maki first noticed a series of cracks throughout their basement walls in February of 2016. If so, much of the bases for Allstate's objections to providing coverage fall away. For example, if the Makis' entire basement had collapsed for legal purposes by the time they were able to realize the problem, the loss would be "sudden" in the sense that it occurred so quickly that there was not time to take remedial measures. This could be the type of suddenness contemplated by the policy coverage for "sudden and accidental direct physical loss caused by . . . hidden decay of the building structure; hidden damage to the building structure caused by insects or vermin; . . . defective methods or materials used in construction . . . ." Otherwise the suddenness requirement could neutralize those explicitly listed covered losses. See Ramirez v. Health Net of Northeast, Inc., 285 Conn. 1, 14 (2008) ("the law of contract interpretation ... militates against interpreting a contract in a way that renders a provision superfluous."). Such a construction could, in turn, render the collapse

coverage illusory and frustrate the reasonable expectations of policy holders. Accordingly, Allstate's

motion to dismiss will be denied without prejudice for renewal after resolution by the Connecticut

Supreme Court of the definition of "collapse" within a homeowners' insurance policy as it pertains

to Connecticut's epidemic of crumbling foundations.

**Statutory Claims**

Allstate has moved to dismiss the second count of plaintiffs' complaint, which alleges

violations of CUIPA and CUTPA. The Makis allege that Allstate has regularly refused to attempt in

good faith to effectuate prompt, fair, and equitable settlements of concrete decay claims where

liability has become reasonably clear, which is proscribed by CUIPA. Specifically, plaintiffs allege

that Allstate has knowingly and frequently given false and misleading reasons for their denial of

coverage. Therefore, the compliant states a plausible claim for violations of both CUIPA and

CUTPA. See Karas v. Liberty Ins. Corp., 33 F. Supp. 3d 110, 117 (D. Conn. 2014).

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is DENIED.

Dated this 20th day of June, 2018, at Bridgeport, Connecticut.


        /s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE